LAW OFFICES OF SIMON HARTER, ESQ.
304 Park Avenue South – 11th Floor
New York, New York 10010
Tel:  (212) 979-0250
Fax: (212) 979-0251
Attorneys for Defendant/Counterclaimant

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

MARITIMA DE ECOLOGIA, S.A. DE C.V.    :      10 Civ. 8134 (KBF)

                       :

               Plaintiff,      :

                       :

       -against-        :

                       :

SEALION SHIPPING LTD.,        :      **VERIFIED ANSWER**

                       :      <u>**AND COUNTERCLAIM**</u>

              Defendant.    :

-----------------------------------------------------------x

Defendant, **SEALION SHIPPING LTD.,** by and through its Attorneys, Law Offices of Simon Harter, Esq., as and for its Verified Answer and Counterclaim, hereby responds to Plaintiff's Verified Complaint, upon information and belief, as follows:

1.     The allegations of Paragraph 1 of Plaintiff's Verified Complaint state conclusions of law requiring no answer; but should answer be required, said allegations are denied.

2.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2 of Plaintiff's Verified Complaint; however, if answer is required, said allegations are denied, except that it is admitted that at all times material hereto, Plaintiff maintained

places of business in Santa Catarina, Nuevo León, Mexico, and Ciudad del Carmen, Campeche, Mexico.

3.      The allegations of Paragraph 3 of Plaintiff's Verified Complaint are admitted.

4.      Defendant denies that non-party Brokerage & Management Corp. is its agent and denies further that said corporation has an office and place of business at 90 Broad Street, Suite 2400, New York, New York 1004.   The remaining allegations of Paragraph 4 of Plaintiff's Verified Complaint state conclusions of law requiring no answer; but should answer be required, said allegations are denied.

5.      The allegations of Paragraph 5 of Plaintiff's Verified Complaint are admitted.

6.      The allegations of Paragraph 6 of Plaintiff's Verified Complaint are denied, except that it is admitted that on or about January 8, 2003, PEMEX Exploration and Producing ("PEP") awarded Contract No. 412003801 to Plaintiff, pursuant to which, *inter alia,* the services of the well testing service vessel TOISA PISCES were provided to PEP and that on or about January 28, 2003, Plaintiff and Defendant entered into a written agreement, entitled "Subcontractor Agreement," which *inter alia*, stated various rights and obligations between the parties regarding the installation, operation and maintenance of a deck processing plant aboard the TOISA PISCES.   Defendant specifically denies that any provision of personnel or services by Plaintiff constitutes the supply of

necessaries within the meaning of 46 U.S.C. §§ 31301, 31341-42 or give rise to a preferred maritime lien.

7.      The allegations of Paragraph 7 of Plaintiff's Verified Complaint are denied, except that it is admitted that on or about March 8, 2008, PEP awarded Contract No. 428218822 [SECOND CONTRACT] for a period of five hundred forty-eight days commencing on or about March 17, 2008 and that during the period of the aforesaid contract, Plaintiff provided certain personnel and services to the TOISA PISCES.

8.      The allegations of Paragraph 8 of Plaintiff's Verified Complaint are denied, except that it is admitted that upon expiration of the PEP contract, the vessel TOISA PISCES along with her crew and certain MARECSA personnel remained on standby until approximately April, 2010, by which time negotiations with PEP were to have been concluded.

9.      The allegations of Paragraph 9 of Plaintiff's Verified Complaint are denied, except that it is admitted that Defendant had knowledge of certain amounts Plaintiff had charged in the past.

10.     The allegations of Paragraph 10 of Plaintiff's Verified Complaint are denied, except that it is admitted that in or about the end of April, 2010, the rig Deepwater Horizon suffered a casualty followed by a large oil spill in the Gulf of Mexico, that the vessel TOISA PISCES was chartered to provide assistance in the oil spill cleanup, that Defendant requested certain personnel and services be provided by Plaintiff, that certain MARECSA personnel joined

the vessel and proceeded to United States waters on or about May 21, 2010, and that while in United States waters, MARECSA personnel rendered certain services on board the vessel.

11.     The allegations of Paragraph 11 of Plaintiff's Verified Complaint are denied, except that it is admitted that Plaintiff has rendered certain invoices to Defendant which Defendant disputes and has not paid.

## FIRST CAUSE OF ACTION

12.     The allegations of Paragraph 12 of Plaintiff's Verified Complaint require no additional answer or other response by Defendant.

13.     The allegations of Paragraph 13 of Plaintiff's Verified Complaint are denied.

14.     The allegations of Paragraph 14 of Plaintiff's Verified Complaint are denied, except that it is admitted that Plaintiff has rendered certain invoices to Defendant which Defendant disputes and has not paid.

15.     The allegations of Paragraph 15 of Plaintiff's Verified Complaint are denied.

## SECOND CAUSE OF ACTION

16.     The allegations of Paragraph 16 of Plaintiff's Verified Complaint require no additional answer or other response by Defendant.

17.     The allegations of Paragraph 17 of Plaintiff's Verified Complaint are denied.

18.     The allegations of Paragraph 18 of Plaintiff's Verified Complaint are denied.  Without prejudice to the foregoing, Defendant specifically disputes that Plaintiff has paid crew wages and puts Plaintiff to its proof as to any such allegation.

19.     The allegations of Paragraph 19 of Plaintiff's Verified Complaint are denied.

**THIRD CAUSE OF ACTION**

20.     The allegations of Paragraph 20 of Plaintiff's Verified Complaint require no additional answer or other response by Defendant.

21.     The allegations of Paragraph 21 of Plaintiff's Verified Complaint are denied, except that it is admitted that Plaintiff provided certain services and crew members to the vessel TOISA PISCES at Defendant's request. Moreover, to the extent the allegations of Paragraph 21 of Plaintiff's Verified Complaint seek to incorporate the allegations of services enumerated in Paragraph 11, Defendant denies that all such services were rendered by Plaintiff or that any services were accepted by, or for the benefit of, Defendant.

22.     The allegations of Paragraph 22 of Plaintiff's Verified Complaint are denied.

23.     The allegations of Paragraph 23 of Plaintiff's Verified Complaint are denied.

**AFFIRMATIVE DEFENSES**

24.     This Court lacks personal jurisdiction over Defendant.

25.     Plaintiff's Verified Complaint should be dismissed for improper service of process.

26.     This action has been stayed pending the outcome of London arbitration of claims between these parties.  Without prejudice to said stay, both now and until the outcome of the London arbitration, Defendant asserts the following additional affirmative defenses in response to the claims and allegations in Plaintiff's Verified Complaint.

27.     Plaintiff's Verified Complaint fails to state a claim or claims upon which relief can be granted against Defendant and should be dismissed.

28.     Without prejudice to the Affirmative Defense pleaded in Paragraph 27 above, Defendant specifically denies that it received, accepted, or benefited from any personnel or services provided by Plaintiff as alleged herein.

29.     Without prejudice to the Affirmative Defense pleaded in Paragraph 27 above, Plaintiff's allegations under the Federal Commercial Instruments and Maritime Lien Act, 46 U.S.C. §§ 31301, 31341-42, should be dismissed on the grounds that any and all claims between the parties are subject to English law, which does not recognize a maritime lien for services rendered to a vessel.

30.     Without prejudice to the Affirmative Defense pleaded in Paragraph 27 above, Plaintiff's prayer that Defendant's property in this (or any other) District be arrested and/or attached should be denied as Plaintiff has not, and cannot, establish necessary grounds under Rule B or Rule C of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions.

31.     Plaintiff's allegations of liability and damages, which are denied, are barred by the doctrines of waiver and/or estoppel.

32.     Plaintiff's damages, if any, were caused and/or contributed to, in whole or in part, by Plaintiff's fault, neglect, carelessness, inattention to duty and/or breach of express and/or implied contractual obligations of, or that of those for whom Plaintiff is legally responsible, all of which are pleaded in bar or diminution of any recovery herein.

33.     Plaintiff's damages, if any, were caused in whole or in part by the fault, neglect, carelessness, inattention to duty and/or breach of express and/or implied contractual obligations of third parties for whom or which this Defendant is not legally responsible.

34.     Plaintiff has failed to mitigate its alleged damages, if any.

35.     Defendant is entitled to recoupment and/or set-off from or against Plaintiff's damages, if any, for amounts due and owing by Plaintiff to Defendant. Moreover, Defendant's claim for recoupment and/or set-off is without prejudice to Defendant's position that this action is subject to a continued stay pending the outcome of the London arbitration between the parties, is without prejudice to the claims asserted in that arbitration proceeding, and is pleaded herein for the specific purpose of preserving Defendant's claims and defenses against any assertion of waiver or estoppel.

36.     Defendant will rely upon all defenses lawfully available at the time of trial and reserves its right to amend this Answer as necessary.

37.     Defendant hereby gives notice pursuant to Rule 44.1 of the Federal Rules of Civil Procedure of its intention to raise an issue or issues arising under the laws of a foreign country; *viz*, the law of England.

## COUNTERCLAIM

38.     And now, adopting the position of Counterclaimant solely for the purpose of avoiding an argument of waiver by failure to plead a compulsory counterclaim, and without prejudice to Defendant's position that the stay of this matter should be maintained pending the outcome of the London arbitration, and without prejudice to the claims and defenses asserted, or to be asserted, by Defendant in the London arbitration proceeding, including the claims asserted below, Defendant avers upon information and belief, as and for its Counterclaim, as follows:

39.     At all times relevant hereto, Plaintiff was and is a foreign corporation and maintained places of business in Santa Catarina, Nuevo León, Mexico, and Ciudad del Carmen, Campeche, Mexico successively.

40.     At all times relevant hereto, Defendant was and is a limited liability corporation organized and existing under the laws of England with a principal place of business in Farnham, England.

41.     On or about November 27, 2002, Plaintiff, Defendant and two other parties entered into a written agreement, entitled "Collaboration Agreement," which, *inter alia,* stated various rights and obligations between the parties enabling Plaintiff and Defendant to submit a tender to PEMEX Exploration and

Production ("PEP") offering the services of the well testing service vessel TOISA
PISCES, then under charter to Defendant.

## JOINT VENTURE AGREEMENT

42.     On or about January 28, 2003, following the award by PEP of
Contract No. 412003801 to Plaintiff on or about January 8, 2003 ("First PEMEX
Contract"), Plaintiff and Defendant entered into a written agreement, entitled
"Joint Venture Agreement", which, *inter alia*, stated various rights and
obligations between the parties with respect to performance of the First PEMEX
Contract.

43.     Because Plaintiff was a named party in the First PEMEX Contract,
Clause 3 of the Joint Venture Agreement provided that Plaintiff would "… have
the representation of the Parties [including Defendant] before Pemex and shall
act as the contact between Pemex and the parties in connection with the
performance of the services provided for in the [First PEMEX] Contract …."

44.     Clause 5.1.1 of the Joint Venture Agreement provided that Plaintiff
would open bank accounts in Mexico for the purpose of receiving payments
from PEP under the First PEMEX Contract.  With the exception of monies due
Plaintiff under another agreement between the parties (entitled "Subcontractor
Agreement," as addressed below) and commissions due Plaintiff under Clause
7.1.1 of the Joint Venture Agreement, all other funds received from PEP were
deemed held in trust by Plaintiff for Defendant's benefit.

45.     Clause 5.4 of the Joint Venture Agreement required Plaintiff to remit all monies payable to Defendant within two (2) banking days of receipt.

46.     Clause 12 of the Joint Venture Agreement provided that:

This Agreement is to be construed and interpreted in accordance with English law and any dispute arising from this Agreement, or its interpretation, shall be referred to arbitration in London in accordance with LMAA rules.

47.     In a subsequent agreement entered into by the parties,  entitled "Transaction Agreement," Plaintiff expressly acknowledged in writing its previous admission that "… it had failed to comply with the [Joint Venture Agreement's] methods and instructions for payment of the charter hire, thereby breaching the Joint Venture Agreement."

48.     In the Transaction Agreement, Plaintiff also admitted in writing, with respect to the Joint Venture Agreement, that it "failed to pay said charter hire to [Defendant] as required …."

49.     Plaintiff admitted further that at the time of the termination of the First PEMEX Contract, "… there remained unpaid charter hire and other expenses due and owing to [Defendant]."

<u>SUBCONTRACTOR AGREEMENT</u>

50.     On or about January 28, 2003, Plaintiff and Defendant entered into a written agreement, entitled "Subcontractor Agreement," which, *inter alia*, stated various rights and obligations between the parties regarding the installation, operation and maintenance of a deck processing plant aboard the TOISA PISCES.

51.     Included among the various contractual provisions in the Subcontractor Agreement was a clause calling for English law and London arbitration, said clause being identical in wording to the clauses referred to in Paragraph 46 above.

52.     The First PEMEX Contract terminated by its terms on or about March 3, 2008.

## TRIPARTITE AGREEMENT

53.     On or about March 14, 2008, Plaintiff, Defendant and another party entered into a written agreement, entitled "Tripartite Agreement", which, *inter alia*, stated various rights and obligations between the parties following the award by PEP of Contract No. 428218822, to Plaintiff only, on or about March 10, 2008 ("Second PEMEX Contract").

54.     Included among the various contractual provisions in the Tripartite Agreement was a clause calling for English law and London arbitration, said clause being identical in wording to the clauses referred to in Paragraphs 46 and 51 above.

## AGREEMENT OF MARCH 14, 2008

55.     On or about March 14, 2008, Plaintiff and Defendant entered into a written agreement, entitled "Agreement," which, *inter alia*, stated various rights and obligations between the parties regarding the execution, modification, and performance of the Second PEMEX Contract.

56.     Included among the various contractual provisions in the Agreement of March 14, 2008 was a clause calling for English law and London arbitration, said clause being identical in wording to the clauses referred to in Paragraphs 46, 51 and 54 above.

## ADDENDUM 1 TO TRIPARTITE AGREEMENT

57.     On or about March 14, 2008, Plaintiff and Defendant entered into a written agreement, entitled "Addendum No. 1 Tripartite Agreement Dated 14 March 2008," which, *inter alia*, amended certain terms of the Tripartite Agreement referred to in Paragraphs 53-54 above.

58.     Included among the various contractual provisions in Addendum No. 1 to the Tripartite Agreement was a clause stating "All other terms and conditions of the Tripartite Agreement shall remain unchanged."   Among the terms and conditions of the Tripartite Agreement which remained unchanged by Addendum 1 was the clause providing for English law and London arbitration referred to in Paragraph 54 above and which is identical in wording to the clauses referred to in Paragraphs 46, 51 and 56 above.

## ADDENDUM 1 TO SUBCONTRACTOR AGREEMENT

59.     On or about June 3, 2008, Plaintiff and Defendant entered into a written agreement, entitled "Addendum No. 1 Subcontractor Agreement Dated 28 January 2003," which, *inter alia*, amended certain terms of the Subcontractor Agreement referred to in Paragraphs 50-52 above.

60.     Included among the various contractual provisions in Addendum No. 1 was a clause stating "All other terms and conditions of the Subcontractor Agreement shall remain unchanged."  Among the terms and conditions of the Subcontractor Agreement which remained unchanged by Addendum 1 was the clause providing for English law and London arbitration referred to in Paragraph 51 above and which is identical in wording to the clauses referred to in Paragraphs 46, 54, 56 and 58 above.

## TRANSACTION AGREEMENT

61.     On or about June 3, 2008, Plaintiff and Defendant entered into a written agreement, entitled "Transaction Agreement," which, *inter alia,* stated various rights and obligations between the parties resulting from Plaintiff's failure to pay substantial monies it owed Defendant pursuant to the terms and conditions of the Joint Venture Agreement referred to in Paragraphs 42-46 above.

62.     The Transaction Agreement was signed on behalf of Plaintiff by Gabriel Delgado, a/k/a Gabriel Delgado Saldivar, acting within the course and scope of his authority as CEO of Plaintiff.

63.     Plaintiff acknowledged in the Transaction Agreement that it owed Defendant the sum of Four Million Nine Hundred Thousand United States Dollars (U.S. $4,900,000.00) in outstanding charter hire.

64.     The Transaction Agreement set forth various additional terms and conditions pursuant to which Plaintiff agreed to pay and/or credit the amounts due and owing to Defendant.

- 13 -

65.     Clause 2.d of the Transaction Agreement provided that Plaintiff "will pay to [Defendant] USD 300,000 per month commencing 18 March 2009, until the outstanding balance of the USD 6,500,000 (Six Million Five Hundred Thousand" owed to [Defendant] is paid in full."

66.     Clause 3 of the Transaction Agreement provided that Plaintiff would assign its earnings from the Second PEMEX Contract to Defendant and that it would execute, and have PEP execute, an "Assignment/Trust Agreement" within sixty (60) days of the date of the Transaction Agreement.

67.     Plaintiff failed to execute, and cause PEP to execute, the Assignment/Trust Agreement within the sixty (60) day required under the Transaction Agreement.

68.     Clause 4 of the Transaction Agreement provided that in compliance with the repayment obligation in Clause 2.d, Plaintiff would assign all monthly hire payments due from PEP, which were payable to Plaintiff in connection with a charter party agreement for a vessel named BOURBON OPALE, to Defendant pursuant to the aforementioned "Assignment/Trust Agreement."

69.     Plaintiff failed to assign to Defendant all of the monthly hire payments for the BOURBON OPALE, which were due it from PEP.

70.     Plaintiff made three payments, two in December of 2009, of which one was for One Hundred Twenty Thousand U.S. Dollars (U.S. $120,000.00) and the other for Sixty Thousand U.S. Dollars (U.S. $60,000.00), and a third in March

of 2010 for Sixty Thousand U.S. Dollars (U.S. $60,000.00), but no further payments were made thereafter by or on behalf of Plaintiff.

71.     On information and belief, in lieu of paying the funds due Defendant as required under the Joint Venture Agreement and the Transaction Agreement, Plaintiff fraudulently diverted those funds for its own purposes, in connection with matters wholly unrelated to Defendant or the various contractual agreements between the parties.

72.     Clause 5 of the Transaction Agreement required Plaintiff to turn over to Defendant all documents relating to the BOURBON OPALE charter party.

73.     Plaintiff did not provide Defendant with all of the documents to relating to the BOURBON OPALE charter with PEP.

74.     As acknowledged in the Transaction Agreement, as a result of an audit dated December 2, 2007 by Moore Stephens, Plaintiff was found also to owe Defendant the sum of Nine Hundred Eleven Thousand Three Hundred Nine United States Dollars and Thirty-Four Cents (U.S. $911,309.34) relating to charges for processing plant personnel, which amount Plaintiff disputed ("the Disputed Amount").

75.     Plaintiff agreed in the Transaction Agreement that subject to review of the Disputed Amount, it owed the total sum of Six Million Five Hundred Thousand United States Dollars (U.S. $6,500,000.00), inclusive of interest, to Defendant.

76.     With respect to the Disputed Amount, the Transaction Agreement provided that Defendant would appoint an independent international accounting firm to verify/reconcile the audit conducted by Moore Stephens and that in the event the second audit found that Plaintiff was entitled to a reduction on the More Stephens audit of U.S. $911,309.34, that amount would be credited by Defendant against the total amount due it by Plaintiff.  The finding of the second audit was that a very similar amount was due by Plaintiff, but Plaintiff refused to accept the finding of the second audit, thereby resulting in the original amount remaining due and owing by Plaintiff to Defendant.

77.     As of the date of this Verified Answer and Counterclaim, the net amount remaining due by Plaintiff to Defendant under the terms of the Transaction Agreement is approximately U.S. Three Million Eight Hundred Seventy Eight Thousand Nine Hundred Seventy Eight Dollars and Seventy Three Cents (U.S. $3,878,978.73).

78.     Clause 13 of the Transaction Agreement provides that:

In the event [Plaintiff] breaches this Transaction Agreement before and/or after each of the  Assignments/Trust Agreements are in place for the New Pisces Contract and the Bourbon Contract, [Defendant] has the right to pursue [Plaintiff] both criminally and/or civilly, to immediately claim the balance still owed to [Defendant], and to take any other action to protect its interests and/or recover the balance due in law and/or equity in whatever court and/or jurisdiction it deems necessary or appropriate in its sole discretion.

79.     Included among the various contractual provisions in the Transaction Agreement was a clause calling for English law and London

arbitration, said clause being identical in wording to the clauses referred to in Paragraphs 46, 51, 54, 56 and 60 above.

## FIRST CAUSE OF ACTION - BREACH OF FIDUCIARY DUTY AND BREACH OF CONTRACT IN RESPECT OF THE JOINT VENTURE AGREEMENT

80.    Subject in all respects, and without prejudice, to Defendant's position that the stay of this action should be maintained pending the outcome of the London arbitration, and without waiving its claims in the London arbitration, Defendant repeats and reavers the allegations set forth in Paragraphs 1 through 79 above as if fully set forth herein, solely to avoid an argument of waiver by failure to plead a compulsory counterclaim

81.    As alleged above, Plaintiff has admitted, in writing, to being in breach of the Joint Venture Agreement by virtue of its failure to pay over the substantial amounts due Defendant under that Agreement.

82.    As also alleged above, pursuant to the terms of the Joint Venture Agreement, Plaintiff agreed to hold in trust for Sealion certain funds paid by PEP under the First PEMEX Contract, and to pay those funds over to Defendant.  By virtue of this agreement, Plaintiff thereby undertook to act on behalf of Defendant in receiving and forwarding funds due to Defendant, thereby giving rise to a fiduciary relationship of trust and confidence.

83.    In light of the fiduciary duty Plaintiff owed to Defendant, Defendant reasonably and legitimately expected that Plaintiff would not utilize its position in a manner adverse to Defendant's interests.

84.     Moreover, by failing to pay the substantial amounts due and owing Defendant, Plaintiff has breached its fiduciary duty to Defendant in failing to act in good faith and/or in acting for its own benefit and without the informed consent of Defendant.

85.     As a consequence of Plaintiff's breach of contract and its breach of fiduciary duty, Defendant has been caused to suffer damages in an amount to be established at trial, but presently estimated in the approximate amount of U.S. Three Million Eight Hundred Seventy Eight Thousand Nine Hundred Seventy Eight Dollars and Seventy Three Cents (U.S. $3,878,978.73), plus interest, legal fees and costs.

**SECOND CAUSE OF ACTION –**
**BREACH OF CONTRACT IN RESPECT**
**OF THE TRANSACTION AGREEMENT**

86.     Subject in all respects, and without prejudice, to Defendant's position that the stay of this action should be maintained pending the outcome of the London arbitration, and without waiving its claims in the London arbitration, Defendant repeats and reavers the allegations set forth in Paragraphs 1 through 85 above as if fully set forth herein, solely to avoid an argument of waiver by failure to plead a compulsory counterclaim

87.     By virtue of the Transaction Agreement referred to above, a contract existed between Plaintiff and Defendant.

88.     Defendant performed all of its contractual obligations under the Transaction Agreement.

89.     Plaintiff is in breach of Clause 2.d of the Transaction Agreement by virtue of its failure to pay the full amount due and owing Defendant under the Joint Venture Agreement, as alleged above.

90.     Plaintiff is in breach of Clause 3 of the Transaction Agreement by virtue of its failure to timely execute, and cause PEP to execute, the Assignment/Trust Agreement provided for in the Transaction Agreement, as alleged above.

91.     Plaintiff is in breach of Clause 4 of the Transaction Agreement by virtue of its failure to assign to Defendant payments due it from PEP in connection with the charter party agreement for the BOURBON OPALE, as alleged above.

92.     Plaintiff is in breach of Clause 5 of the Transaction Agreement by virtue of its failure to provide Defendant all documentation relating to the BOURBON OPALE charter, as alleged above.

93.     As a consequence of one or more of Plaintiff's breach(es) of contract, Defendant has been caused to suffer damages in an amount to be established at trial, but presently estimated in the approximate amount of U.S. Three Million Eight Hundred Seventy Eight Thousand Nine Hundred Seventy Eight Dollars and Seventy Three Cents (U.S. $3,878,978.73), plus interest, legal fees and costs.

**WHEREFORE**, Defendant, **SEALION SHIPPING LTD.**, prays as follows:

A.    That, without prejudice to Defendant's claims and defenses in the London arbitration proceeding between the parties, on the basis of the pleadings, judgment be entered in favor of this Defendant, dismissing Plaintiff's Verified Complaint *with prejudice* and granting Defendant an award of all recoverable fees and costs;

B.    That the stay of this action be maintained pending the outcome of the London arbitration between the parties;

C.    In the alternative, that judgment be entered on any award rendered in favor of Defendant in London arbitration; and

D.    That Defendant may have such other and further relief as this Honorable Court deems just and proper under the circumstances.

Dated:      New York, New York
            March 18, 2013

                        Respectfully submitted,

                        **LAW OFFICES OF SIMON HARTER, ESQ.**
                        Attorney**s** for Defendant/Counterclaimant,
                        SEALION SHIPPING LIMITED

            By:     /s/ Simon Harter_____
                    Simon Harter
                    304 Park Avenue South -11th Floor
                    New York, NY 10010
                    (212) 979-0250 Phone
                    (212) 979-0251 Fax
                    sharterlaw@harterlaw.com

## **VERIFICATION**

I, Richard W. Baldwin, hereby affirm as follows:

1.     I am a Director of Sealion Shipping Ltd., Defendant in this action.   The information in the foregoing Verified Answer and Counterclaim is true to the best of my knowledge, information and belief, except as those matters therein stated to be alleged upon information and belief.   As to those matters, I believe them to be true.

2.     The sources of my knowledge, information and belief are my personal knowledge and documents maintained by or on behalf of Defendant.

3.     I hereby affirm upon penalty of perjury that the foregoing statements are true and correct.

Executed this _18th_ day of March, 2013.


_____
Richard W. Baldwin